UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SD3, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 08-1242 (RCL) |
| | ) | |
| TERESA STANEK REA, (Acting) Director, | ) | |
| United States Patent & Trademark Office | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff SD3, LLC has sued for a patent on its saw-stopping safety technology. In short, SD3 claims that it has invented a new way to stop a saw blade almost instantaneously in the event of a stray finger, or other unsafe condition, entering its path. The government disagrees and the PTO denied SD3's patent application on the ground that it was anticipated by a 1974 patent that described a similar piece of technology. Now, SD3 moves for summary judgment and to exclude defendant's ("the Director's") expert witnesses. SD3 also asks that the Court exclude the most recent declaration of one of the Director's experts, Dr. Charles F. Landy, as untimely filed. For the following reasons, SD3's motion is denied in all respects. However, the Court will briefly reopen discovery so that SD3 may again depose Dr. Landy solely on the subject of his late filed declaration if it so chooses.

## I. BACKGROUND

The factual and procedural background of this case is substantially set out in the Court's July 8, 2013 memorandum opinion regarding the Director's earlier motion for summary

judgment. *SD3, LLC v. Dudas*, 952 F. Supp. 2d 97 (D.D.C. 2013). A brief summary of that background relevant to decision on this motion is provided below.

### A. SD3 Patent Application

SD3 applied for a patent on its saw stopping technology in 2002, defining its invention in two claims at issue in this case, claim 1 and claim 30. The claims state:

> 1. A machine comprising:
>   an operative structure adapted to perform a task, where the operative structure includes a mechanical cutting tool adapted to move in at least one motion; and
>   a safety system adapted to detect the occurrence of an unsafe condition between a person and the cutting tool, where the safety system includes a detection subsystem adapted to detect the unsafe condition, and a reaction subsystem adapted to mitigate the unsafe condition;
>   where the reaction subsystem includes a brake mechanism adapted to stop at least one motion of the cutting tool within 10 milliseconds after detection of the unsafe condition.
>
> 30. The machine of claim 1 where the brake mechanism is adapted to stop at least one motion of the cutting tool in less than 5 milliseconds after detection of the unsafe condition.

Administrative Record (excerpts) at 836, 838, ECF No. 35-3. The Patent Examiner rejected claim 1 as lacking novelty under 35 U.S.C. § 102(b) and rejected claim 30 as obvious under 35 U.S.C. § 103(a). *Ex parte Gass*, No. 2007-4061, 2008 WL 2195265, at *1 (B.P.A.I. May 27, 2008). The prior art relied upon in so holding was U.S. Patent 3,858,095, which identifies inventors Wolfgang Friemann and Josef Proschka ("the Friemann patent"). *Id.*; U.S. Patent 3,858,095 (filed Aug. 1, 1973) (issued Dec. 31, 1974). In the words of the Bureau of Patent Appeals and Interferences, the Friemann patent, similar to SD3's claimed invention, "discloses a machine including an operative structure adapted to perform a task, where the operative structure includes a mechanical cutting tool 5 adapted to move in at least one motion and a safety system adapted to

2

detect the occurrence of an unsafe condition between a person and the cutting tool, where the safety system includes a detection subsystem 3 adapted to detect the unsafe condition." *Ex parte Gass*, 2008 WL 2195265, at *2 (internal citations omitted); *see* '095 Patent. The patent discloses that its safety system includes a braking mechanism adapted to stop a cutting tool within 10 milliseconds after detection of the unsafe condition. '095 Patent, col. 4 ll. 5–6. It also discloses that experiments had shown that by using a protective circuit arrangement along the lines of the claimed invention, it was possible to stop a cutting tool in about 5 milliseconds. *Id.* at col. 2 ll. 15–20.

The BPAI affirmed the Examiner as to claim 1, finding that SD3 had failed to establish that the Friemann patent did not enable a person of ordinary skill in the art to make or carry out the claimed invention without undue experimentation. *Ex parte Gass*, 2008 WL 2195265, at *4. It also affirmed the Examiner's finding with respect to claim 30, stating that SD3 failed to provide any substantial evidence to support the argument that "the claimed limitation"—of stopping a blade in less than 5 milliseconds, rather than 10 milliseconds—was "not a variable that can be optimized by the use of routine skill in the art and that it is a significant and difficult issue to adapt a brake mechanism to operate in the recited time scale." *Id.* at *6.

### B. Present Litigation and Motion for Summary Judgment

SD3 filed suit pursuant to 35 U.S.C. § 145, seeking a reversal of the BPAI's decision and the award of a patent on claims 1 and 30. Compl., ECF No. 1. The Director later moved for summary judgment, ECF No. 7, which the Court denied after finding that SD3 had presented sufficient evidence to raise a genuine issue of material fact regarding its entitlement to a patent. *SD3, LLC*, 952 F. Supp. 2d at 97. At that time, the Director had presented no additional evidence

in support of its position, beyond the language of the Friemann patent, the findings of the BPAI and Examiner, and legal presumptions discussed below. *Id.* at 103. Now, SD3 moves to exclude the expert witnesses the Director has since put forward, in addition to moving for summary judgment. Pl.'s Mem. of Points and Authorities in Supp. of its Mot. to Exclude Expert Ops. and for Summ. J. 1–2, ECF No. 34-1 ("Pl.'s Mot.").

## II. REQUEST TO EXCLUDE DR. LANDY DECLARATION

Before the Court can consider SD3's motion to exclude expert opinions and for summary judgment, it must determine whether to exclude the Declaration of Dr. Charles F. Landy, submitted by the Director as an attachment to its response in opposition to SD3's motion on August 25, 2014. Dr. Charles F. Landy Decl., ECF No. 35-11. SD3 presents a laundry list of arguments for its exclusion, namely that it was filed late without justification, it does not correct prior testimony, its inclusion would be prejudicial to SD3, and that it is misleading and unhelpful. Pl.'s Reply Mem. to Def.'s Opp'n 13, ECF No. 36.

A party must make disclosures regarding its expert witnesses in written reports setting forth, *inter alia*, each expert's opinions, the basis for those opinions, and the facts or data considered in forming them. Fed. R. Civ. P. 26(a)(2)(B). These disclosures must occur "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). The most recent scheduling order in this case states that "[d]iscovery concerning PTO expert's review of documents produced by plaintiff on May 23, 2014, and any supplemental report he provides, will close on June 20, 2014." Scheduling Order, May 30, 2014, ECF No. 33. All other discovery closed on May 30, 2014. *Id.* Therefore, all expert disclosures must have occurred by June 20, 2014 in this case to comply with the Court's Scheduling Order.

4

To the extent required by Rule 26(e), a party must supplement its expert disclosures. Fed. R. Civ. P. 26(a)(2)(E). Rule 26(e) requires supplementing disclosures when a "party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). As applied to expert witnesses, "the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition." Fed. R. Civ. P. 26(e)(2). This rule provides a "limited exception" to the deadlines for expert reports imposed by Rule 26(a)(2). *Richardson v. Korson*, 905 F. Supp. 2d 193, 199 (D.D.C. 2012). It "does not grant a license to supplement a previously filed expert report because a party wants to." *Id.* (quoting *Estate of Gaither ex rel. Gaither v. District of Columbia*, Civil Action No. 03-1458, 2008 WL 5869876, at *3 (D.D.C. Oct. 23, 2008)). As interpreted by decisions of this district, Rule 26(e)'s exception is "narrow" and only permits supplemental reports for the purpose of "correcting inaccuracies or adding information that was not available at the time of the initial report." *Minebea Co. v. Papst*, 231 F.R.D. 3, 6 (D.D.C. 2005).

Rule 37(c)(1) provides that a failure to disclose according to the requirements of Rule 26(a) or (e) causes the exclusion of the information not disclosed "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). An important consideration in determining whether a failure to disclose was harmless is whether the late filed report is submitted well in advance of trial, leaving the opposing party time to adjust its trial preparation in light of the new information provided regarding the expert's opinion. *Dormu v. District of Columbia*, 795 F. Supp. 2d 7, 28 n.16 (D.D.C. 2011). Another key consideration in determining the prejudicial impact of the late disclosure is whether discovery can be briefly reopened to allow

the opposing party to depose the expert in response to the supplement. *Richardson*, 905 F. Supp. 2d at 200. Also, in determining the harmlessness of a late filed report, the Court should consider whether the proposed supplement would offer entirely new opinions or fundamentally change the opinions already offered or would merely supplement and fill in the gaps of a previous disclosure. *Compare Dormu*, 795 F. Supp. 2d at 28 n.16 (concluding that the "supplemental affidavit sets forth references, not new opinions, and therefore does not blindside defendants with new information"), *with Dag Enters., Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 109 (D.D.C. 2005) (observing that plaintiffs' proposed supplemental filing was not a "typical supplementation" because it sought to entirely "change the substance of their contentions").

Dr. Landy states that his declaration was required to respond to calculations presented to him by SD3's counsel in his most recent deposition, calculations based on assumptions he was not previously aware of. Landy Decl. ¶¶ 4, 10. Therefore, the Director contends that Dr. Landy's disclosure is permitted under Rule 26(e)(1) and (e)(2). In response to these calculations—and questions about them during his deposition—Dr. Landy located a band-saw which, he argues, demonstrates that a system enabled by the Friemann patent could achieve the claimed stopping times. *Id.* ¶ 9.

This new saw and its substantiation of Dr. Landy's opinions is precisely the type of bolstering of expert opinion that Rule 26(e) does not contemplate. *See Wannall v. Honeywell Int'l, Inc.*, 292 F.R.D. 26, 35 (D.D.C. 2013) (internal citations omitted). Dr. Landy did not merely correct inaccuracies in his deposition testimony; he found additional evidence that further substantiated his previously stated expert opinions. Furthermore, Dr. Landy did not state why he had not previously located a saw of the type referred to in his supplement. The saw located was manufactured over 20 years ago. Landy Decl. ¶ 9 n.2. Thus, Dr. Landy's declaration was not

justified on the basis of receiving new information not previously available to him. Having satisfied neither of the "narrow" purposes of Rule 26(e), the Court concludes that Dr. Landy's declaration is an untimely filed expert disclosure. *See Minebea Co.*, 231 F.R.D. at 6.

The prejudice accruing to SD3 as a result of this late filing, however, can be minimized. First, no date for trial has been set. Therefore, SD3 has ample opportunity to internalize the new information provided by Dr. Landy into its trial strategy. *See Dormu*, 795 F. Supp. 2d at 28 n.16 (holding that prejudice may be sufficiently cured when disclosure is made well in advance of trial). Also, the Court will briefly and narrowly reopen discovery for the purpose of allowing SD3 to depose Dr. Landy solely regarding this declaration, if it so chooses. *See Richardson*, 905 F. Supp. 2d at 200 (holding that prejudice may be cured by allowing the opposing party an opportunity to depose an expert regarding a late filed disclosure). Finally, the opinions offered by Dr. Landy are not a substantial alteration of his prior opinions that would blindside SD3; instead, they merely provide further support for his prior contentions. *Cf. Dormu*, 795 F. Supp. 2d at 28 n.16 (finding reduced prejudice where a late filed disclosure merely provided new references for an expert's opinions).

The Court notes that the parties should not take the Court's permissiveness in this instance as a license to make further late filings regarding their expert witnesses. Indeed, the disruption to a court's efficient management of a case caused by late filings of this type is a key consideration in dealing with an issue like this. *Richardson*, 905 F. Supp. 2d at 200. Nonetheless, in this instance, given that any prejudice to SD3 may be sufficiently cured, the Court will not exclude Dr. Landy's declaration and will consider it as part of the record on SD3's motion.

### III. MOTION TO EXCLUDE EXPERT OPINIONS

SD3 moves to exclude the Director's experts, Dr. Landy and Michael Gililland. It argues that their testimony is unreliable because based only on the subjective belief that the Friemann patent accurately and honestly reported that experiments were conducted stopping a saw blade within the claimed time limits. Pl.'s Mot. 14, 17. SD3 argues on this basis that Dr. Landy and Gililland should be excluded pursuant to the Court's role as initial gatekeeper before expert testimony may reach the trier of fact.

### A. Legal Standard

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Pursuant to this rule, trial judges act as "gatekeepers" and must "exclude unreliable expert testimony." *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 608 F.3d 871, 894 (D.C. Cir. 2010). In the context of scientific expert testimony, the Supreme Court has outlined four illustrative factors for determining reliability: (1) whether the theory or technique underlying the testimony has been or can be tested, (2) whether it has been subjected to the peer review and publication process, (3) its known or potential rate of error, and (4) its "general acceptance" in the relevant scientific community. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593–94 (1993). In the case of technical or non-scientific expert testimony, such as that presented by Dr. Landy and Gililland, a trial judge should apply the *Daubert* factors to the extent relevant to determining a particular expert's reliability. *Kumho Tire Co. v. Carmichael*, 526 U.S.

137, 152–53 (1999). The trial judge has substantial discretion, however, in determining whether an expert's testimony is reliable. *Id.* A court also has substantial discretion in determining how best to make that reliability finding in any given case. *Id.*

When the judge will serve as factfinder in a trial, the gatekeeping requirement is substantially relaxed. *United States v. H & R Block, Inc.*, 831 F. Supp. 2d 27, 30 (D.D.C. 2011) (quoting *Whitehouse Hotel Ltd. P'ship v. Comm'r of Internal Revenue*, 615 F.3d 321, 330 (5th Cir. 2010)) (holding that, without the danger of "tainting the trial by exposing a jury to unreliable evidence," the importance of the court's role as gatekeeper is greatly reduced). This is because "[w]here the gatekeeper and the factfinder are one and the same—that is, the judge—the need to make such decisions [regarding reliability] prior to hearing the testimony is lessened." *In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006) (citing *United States v. Brown*, 415 F.3d 1257, 1268–69 (11th Cir. 2005)); *see also United States v. Wood*, 741 F.3d 417, 425 (4th Cir. 2013). This is not to say that expert testimony in this situation need be any less reliable; it simply means that "the court can hear the evidence and make its reliability determination during, rather than in advance of trial." *In re Salem*, 465 F.3d at 777.

**B. Analysis**

SD3 has argued that the Director's experts should be excluded on the ground that their testimony is not reliable. SD3's sole argument for unreliability is that the expert opinions of Dr. Landy and Gililland are not based on scientific analysis but only on their acceptance of the Friemann patent's statements that experiments were conducted, achieving the stopping times referred to. Pl.'s Mot. 14, 17. The Court notes that SD3 has not challenged the qualifications of the Director's experts and does not reach that issue.

The Court finds that the Director's experts should not be excluded. The opinions, as represented by the submitted expert reports, regard how a person of ordinary skill in the art would understand what the Friemann patent teaches. *See, e.g.*, Michael L. Gililland Report ¶ 24, ECF No. 35-4; Dr. Charles F. Landy Addendum Report 2–3, ECF No. 35-8. This is a topic fit for expert opinion. *See Arthrocare Corp. v. Smith & Nephew, Inc.*, 406 F.3d 1365, 1373–74 (Fed. Cir. 2005) (holding that patent claims were anticipated by an earlier patent and citing testimony by an expert witness who opined on how a person of ordinary skill in the art would understand the teachings of that earlier patent); *Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1473 (Fed. Cir. 1997) (holding that a verdict of anticipation was properly supported by expert testimony regarding how a person of ordinary skill would understand a prior art reference).

Furthermore, Dr. Landy and Gililland's expert opinions are not entirely based on the subjective belief that experiments were conducted demonstrating that a system enabled by the Friemann patent was capable of achieving the described stopping times. Instead, their proposed testimony primarily provides opinions regarding the flaws in SD3's impossibility argument and relies on technical literature and their technical experience in so arguing. *See, e.g.*, Landy Decl. ¶ 9 (performing calculations regarding the braking torque required to stop a blade using various components discovered through research and assumptions derived from knowledge of saw operation); Gililland Report ¶¶ 18–21, 24–25, 27 (discussing saw components discovered in research that arguably contradict assumptions made by SD3's experts and relying on research and experience to reject opinions offered by SD3's experts regarding stopping torque required in a system enabled by the Friemann patent); Dr. Charles F. Landy Report 6–13, ECF No. 35-5 (assessing SD3's expert reports in light of, for example, his reading of the patents at issue, a

technical research paper, and "[his] experience of having developed induction motor design programs and from having predicted and measured the transient torques produced in numerous motors during reswitching operations").

This type of opinion testimony is considered sufficiently reliable to survive a motion to exclude. *Cf. S.E.C. v. Johnson*, 525 F. Supp. 2d 66, 69 n.3 (D.D.C. 2007) (finding admissible expert testimony regarding industry custom that was "drawn from many years of experience" and "derived from significant research"); *Heller v. District of Columbia*, 952 F. Supp. 2d 133, 141 (D.D.C. 2013) (internal citation and quotation marks omitted) (observing a variety of cases where experience formed the primary basis of expertise and concluding that a method of "observ[ing] the relevant evidence and appl[ying] their specialized knowledge to the case at hand" was reliable). Dr. Landy and Gililland appear to have evaluated the Friemann patent, the reports of SD3's experts, and their knowledge derived from experience and research to form their opinions regarding (1) problems in SD3's expert reports and (2) what is possible in a system enabled by the Friemann patent in the hands of a person of ordinary skill in the art. SD3's arguments that Dr. Landy and Gililland's criticisms and opinions do not change the outcome of this case are not reasons to exclude that testimony; such arguments go to the weight to be accorded that testimony, not its admissibility. *See id.* at 142–43 (citing cases).

Additionally, the reduced importance of the gatekeeping function when the court will serve as factfinder, as is the case here, further shows that the Director has sufficiently demonstrated the reliability and helpfulness of its experts' proposed testimony to survive a motion to exclude. *See H & R Block, Inc.*, 831 F. Supp. 2d at 30. If this suit ultimately reaches trial, the Court may at that time further assess the reliability of these experts' testimony and the proper weight to give it. *See In re Salem*, 465 F.3d at 777.

11

## IV. MOTION FOR SUMMARY JUDGMENT

SD3 also moves for summary judgment on the ground that it is physically impossible for the Friemann patent to enable creation of a system that could stop a blade in the time specified in SD3's claims. Pl.'s Mot. 26–29. Therefore, SD3 contends that there is no genuine issue of material fact as to enablement and SD3 is entitled to judgment as a matter of law. *Id.*

### A. Legal Standard

#### 1. Summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A motion for summary judgment is only defeated by a "genuine" dispute as to a "material" fact; the "mere existence of *some* alleged factual dispute" is not enough. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Material facts are those which could affect the outcome of a case, as determined by the substantive law underlying the suit. *Id.* at 248. A dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

When the moving party would bear the burden of proof at trial, it "must support its motion with credible evidence—using any of the materials specified in Rule 56(c)—that would entitle it to a directed verdict if not controverted at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). In response, the nonmoving party must present specific facts, beyond mere allegations or conclusory statements, that would enable a reasonable jury to find in its favor. *Anderson*, 477 U.S. at 256.

#### 2. 35 U.S.C. § 102 – Anticipation

35 U.S.C. § 102(b) states that a person shall not be entitled to a patent if "the invention was patented or described in a printed publication in this or a foreign country . . . more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b) (2006).[1] Under this provision, a person is not entitled to a patent if "the same invention, including each element and limitation of the claims, was known or used by others" before the date of the patent application. *Hoover Grp., Inc. v. Custom Metalcraft, Inc.*, 66 F.3d 299, 302 (Fed. Cir. 1995). This ground for rejecting a patent application, based on lack of novelty, is often referred to as "anticipation." *Id.* Anticipation is a question of fact. *Elan Pharms., Inc. v. Mayo Found. for Med. Educ. & Research*, 346 F.3d 1051, 1054 (Fed. Cir. 2003).

Prior art must be enabling to serve as an anticipating reference. *Id.* To enable a claimed invention, "the prior art reference must teach one of ordinary skill in the art to make or carry out the claimed invention without undue experimentation." *Id.* (quoting *Minnesota Mining and Mfg. Co. v. Chemique, Inc.*, 303 F.3d 1294, 1301 (Fed. Cir. 2002)). The question of "undue experimentation" is evaluated according to eight factors:

(1) the quantity of experimentation;
(2) the amount of direction or guidance present;
(3) the presence or absence of working examples;
(4) the nature of the invention;
(5) the state of the prior art;
(6) the relative skill of those in the art;
(7) the predictability or unpredictability of the art; and
(8) the breadth of the claims.

*Impax Labs., Inc. v. Aventis Pharms., Inc.*, 545 F.3d 1312, 1314–15 (Fed. Cir. 2008) (citing *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988)). Enablement is a "question of law based upon underlying factual findings." *Impax Labs., Inc.*, 545 F.3d at 1315.

---

[1] Section 102 was amended by the Leahy–Smith America Invents Act, Pub. L. 112–29, Sec. 3, 125 Stat. 284 (Sept. 16, 2011). The amended statute does not apply in this case, however, because the patent application at issue was filed before the Act's effective date. *Id.* at Sec. 35.

When the prior art is a prior publication, the standard for enablement to be applied "requires a determination of whether one skilled in the art to which the invention pertains could take the description of the invention in the printed publication and combine it with his own knowledge of the particular art and from this combination be put in possession of the invention on which a patent is sought." *In re Sasse*, 629 F.2d 675, 681 (CCPA 1980) (internal citation and quotation marks omitted). Claimed and unclaimed materials in a patent are presumptively enabling when the Examiner cites them as prior art anticipating a claimed invention. *In re Antor Media Corp.*, 689 F.3d 1282, 1287 (Fed. Cir. 2012). This presumption applies at the district court as well. *Id.* at 1288. Therefore, the burden of proof is initially on the applicant to rebut the presumption of enablement. *In re Sasse*, 629 F.2d at 681. If the applicant puts forward evidence of non-enablement, the burden shifts to the government to "rebut the . . . contention of non-enablement." *Id.* If the government succeeds on this point, the ultimate burden once again rests with the applicant. *Id.*

### 3. 35 U.S.C. § 103 – Obviousness

A patent will not issue "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. §103(a) (2006). Where a prior art reference is said to disclose the claim at issue, the prior art will only render the invention obvious, and therefore unpatentable, if it "enable[s] a person of ordinary skill to make and use the invention." *In re Kumar*, 418 F.3d 1361, 1368 (Fed. Cir. 2005).

### B. Analysis

SD3 argues that the Friemann patent does not enable its claimed invention because it is physically impossible that a system created using the teachings of the Friemann patent can stop a saw blade in .10 or .05 milliseconds. Pl.'s Mot. 26–29.

The Court concludes that the Director has sufficiently presented evidence to raise a genuine issue of material fact as to enablement and, therefore, anticipation and obviousness. First, the Director's experts dispute a number of the assumptions underlying SD3's argument regarding the physical impossibility of the disclosed blade stopping times in the Friemann patent. For example, Gililland concludes that Drs. Turcic and Gass have overstated the amount of torque required to stop the saw's motor by relying on a calculation based on a 3 horsepower motor rather than a less powerful one. Gililland notes the existence of 2 horsepower saw motors, one of which was presented in Dr. Turcic's report as an example of the motor in a textile cutting machine. Gililland Report ¶¶ 19–20. Dr. Landy opines that the response time of electromechanical brakes can be "significantly shortened" by overexciting them, thus stopping the blade at a faster speed than SD3 contends is possible. Landy Addendum Report 2. The dispute as to whether SD3's assumptions are required is material to the question of whether it is impossible that a system enabled by the Friemann patent could achieve the stopping times discussed.

Second, the Director's experts have presented evidence that the Friemann patent's disclosed blade stopping times are not physically impossible. For example, Dr. Landy provided calculations in his declaration for a blade stopping mechanism, allegedly enabled by the teachings of the Friemann patent, that could achieve the disclosed stopping times. Landy Decl. ¶ 9. Indeed, SD3's argument that summary judgment is proper largely hinges on the absence of calculations of this very type.

Finally, the Director and SD3 disagree about whether the Friemann patent teaches a person of ordinary skill in the art to apply a brake directly to the blade of a saw. Pl.'s Reply 15; Def.'s Opp'n to Pl.'s Mot. 27–28, ECF No. 35. If the Friemann patent teaches a person of ordinary skill to apply a brake directly to the saw blade, it would allow for "slippage" in the system after the blade had already stopped. *Id.* The calculations of SD3's experts rely in part on the premise that Friemann's patent does not contemplate a braking mechanism that would allow for slippage. Pl.'s Statement of Material Facts ¶ 3, ECF No. 34-3. Thus, SD3's physical impossibility argument relies, in part, on what exactly the Friemann patent teaches regarding a directly applied brake. The Director's experts have opined that a braking system could stop one rotation of a saw blade much faster if slippage were permitted in that system. Landy Addendum Report 3; Gililland Report ¶¶ 17, 24.

What a prior art reference teaches a person of ordinary skill in the art is a question of fact. *In re Graves*, 69 F.3d 1147, 1151 (Fed. Cir. 1995). The Director has, therefore, raised a fact question on this point as well, regarding what the Friemann patent teaches. The answer to this question is material to the outcome of this litigation, in light of (1) the importance of the "no slippage" premise to SD3's experts' opinions and (2) the opinions of the Director's experts regarding the stopping speed that is possible when a brake is applied directly to the blade. If the Friemann patent anticipated SD3's claims by enabling a person of ordinary skill in the art, without undue experimentation, to create a device capable of achieving SD3's claims, it must lose. 35 U.S.C. §§ 102(b), 103 (2006); *Elan Pharms., Inc.*, 346 F.3d at 1054. Therefore, summary judgment is inappropriate. SD3's motion is denied.

## V. CONCLUSION

SD3's motion for summary judgment and to exclude the Director's expert witnesses is denied. The Director has sufficiently demonstrated that its experts' opinions are reliable and helpful to the Court as trier of fact to survive a motion to exclude. SD3 has failed to demonstrate that there is no genuine issue of material fact regarding its entitlement to a patent.

The Court will allow the submission of the untimely filed supplemental declaration of Dr. Landy. In light of the potential prejudice to SD3, however, the Court will briefly reopen discovery for the limited purpose of allowing SD3 to depose Dr. Landy on this declaration alone, should it choose to do so.

Counsel for the parties shall appear before the Court at the date and time specified in the Court's Order accompanying this Opinion for a status conference regarding this suit. Counsel should be prepared to discuss a schedule for trial of this matter.

Signed by Royce C. Lamberth, United States District Judge, on October 20, 2014.